UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRANDI A. RILEY, )<br>)<br>*Plaintiff*, )<br>)<br>*vs.* )<br>)<br>CAROLYN W. COLVIN, *Commissioner of the* )<br>*Social Security Administration*, )<br>)<br>*Defendant*. ) | No. 1:14-cv-01561-JMS-MJD |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Brandi A. Riley received supplemental security income benefits as a child for a disability, and the Social Security Administration ("SSA") re-evaluated her disability status in 2011 and determined that she was no longer disabled as of September 12, 2011. [Filing No. 13-3 at 3.] This decision was upheld on reconsideration on June 22, 2012. [Filing No. 13-4 at 33.] Administrative Law Judge John Metz (the "ALJ") held a hearing on April 17, 2013, and issued a decision on May 21, 2013, concluding that Ms. Riley was not entitled to receive benefits after September 12, 2011. [Filing No. 13-2 at 27; Filing No. 13-2 at 39.] The Appeals Council denied review on July 23, 2014. [Filing No. 13-2 at 2.] Ms. Riley then filed this action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g). [Filing No. 1.]

### I.
### BACKGROUND

Ms. Riley turned eighteen years old on January 10, 2011 and, after the SSA re-evaluated her entitlement to benefits, she was notified that the SSA no longer considered her disabled as of

1

September 12, 2011.[1]  [Filing No. 13-2 at 15.]  Upon Ms. Riley's request, the ALJ held a hearing on April 17, 2013.  [Filing No. 13-2 at 39-81; Filing No. 13-4 at 36.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a), the ALJ issued an opinion on March 21, 2013, determining that Ms. Riley was not entitled to receive disability benefits after September 12, 2011.  [Filing No. 13-2 at 13-27.]  The ALJ found as follows:

- The ALJ did not consider Step One of the analysis, because that step is not used for re-determining disability at age eighteen.  20 C.F.R. § 416.987(b).  [Filing No. 13-2 at 14.]

- At Step Two of the analysis, the ALJ found that since September 12, 2011, Ms. Riley has suffered from the severe impairments of obesity, scoliosis, congenital absence of the right upper extremity from the forearm, diabetes, intermittent explosive disorder, social phobia, avoidant personality disorder, paranoid personality disorder, dysthymia, mood disorder, and bipolar disorder.  [Filing No. 13-2 at 15-19.]

- At Step Three of the analysis, the ALJ found that since September 12, 2011 Ms. Riley has not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Filing No. 13-2 at 19-21.]

---

[1] Ms. Riley detailed pertinent facts in her opening brief, and the Commissioner did not dispute those facts.  Because those facts implicate sensitive and otherwise confidential medical information concerning Ms. Riley, the Court will simply incorporate those facts by reference herein.  Specific facts will be articulated as needed.

- After Step Three but before Step Four, the ALJ found that since September 12, 2011, Ms. Riley has had the residual functional capacity ("RFC") to: "lift twenty pounds occasionally and ten pounds frequently with the left upper extremity but could not do any lifting with the right upper extremity. [She] could push and pull with the left upper extremity within those restrictions. [She] has no restrictions in her abilities to sit, stand or walk. [She] could climb stair[s] and ramps occasionally but could not climb ropes, ladders or scaffolds. [She] could occasionally crawl, bend, stoop and crouch. [She] has no use of the right hand. [She] has no restriction on the use of the left upper extremity including reaching overhead, fingering, handling or grasping. [She] is able to drive. [She] could not work around unprotected heights or around dangerous, moving machinery. There are no respiratory, visual or communicative restrictions. [She] could have only occasional contact with the public, supervisors and coworkers. [She] is restricted to performing semiskilled work." [Filing No. 13-2 at 21.]

- At Step Four of the analysis, the ALJ found that Ms. Riley has no past relevant work. [Filing No. 13-2 at 26.]

- At Step Five of the analysis, the ALJ found that Ms. Riley could perform several jobs in the national economy, including Inspector, General Office Clerk, or Fast Food Worker. [Filing No. 13-2 at 26-27.]

Ms. Riley sought review of the ALJ's decision from the Appeals Council, but that request was denied on July 23, 2014, [Filing No. 13-2 at 2-5], making the ALJ's decision the Commissioner's final decision subject to judicial review. Ms. Riley then filed this action, asking

3

that the Commissioner's decision be reversed and requesting an award of benefits, or in the alternative, that the case be remanded for further proceedings. [Filing No. 1; Filing No. 21 at 16.]

## II.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last…not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can

4

> perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). Step One, however, does not apply in the context of the SSA re-evaluating a claimant's eligibility for benefits upon their eighteenth birthday, when they have been receiving benefits as a minor. *See* 20 C.F.R. § 416.987 ("When we redetermine your eligibility, we will use the rules for adults (individuals age 18 or older) who file new applications…[but w]e will not use the rule…for people who are doing substantial gainful activity….").

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An

5

award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
### DISCUSSION

Ms. Riley makes three arguments in support of her appeal: (1) that she did not plainly and intelligently waive her right to counsel at the hearing before the ALJ, and was prejudiced by a lack of representation because the ALJ failed to fully develop the record; (2) that substantial evidence fails to support the ALJ's determination that she was not disabled due to major depression, social phobia, intermittent explosive disorder, avoidant personality-paranoid personality disorder, and bipolar disorder; and (3) that the evidence does not support the ALJ's Step Five determination that Ms. Riley was not disabled because she could perform some jobs. [Filing No. 21 at 10-15.] The Court will consider Ms. Riley's arguments in the order in which they were raised.

### A.  Attorney Representation at the Hearing

Ms. Riley argues that the ALJ did not adequately advise her regarding her right to have an attorney at the hearing because the ALJ did not explain that an attorney could "obtain and present the evidence needed to prove her disability, could question her and any experts to prove her disability, and could ensure that her rights were protected in the proceeding." [Filing No. 21 at 10.] Ms. Riley asserts that the ALJ discouraged her from obtaining an attorney, and that she was prejudiced by "being forced to go forward by the ALJ without an attorney." [Filing No. 21 at 11.]

The Commissioner responds that the Court need not reach the question of whether Ms. Riley's waiver of counsel was valid because the Commissioner fully developed the record. [Filing No. 22 at 2-3.] The Commissioner argues in the alternative that Ms. Riley received adequate notification of her right to have an attorney because the letter informing her about her hearing included information about her options for obtaining representation. [Filing No. 22 at 5.] The

6

Commissioner also points to an attachment to Ms. Riley's hearing letter, which provided information on free legal assistance and phone numbers for referral services. [Filing No. 22 at 5-6.]

On reply, Ms. Riley argues that the ALJ told her erroneously that "she would not be able to obtain an attorney because she did not have any past due benefits." [Filing No. 23 at 3.] She also argues that she was "inhibited by the ALJ's improper behavior from fully testifying about her impairments, due to her missing hand emphasized by the ALJ and her major depression, social phobia, intermittent explosive disorder, avoidant personality-paranoid personality disorder and her bipolar disorder….The ALJ knew or should have known that his misbehavior to force her to waive her right to an attorney would also have the effect of inhibiting her from fully testifying about her impairments." [Filing No. 23 at 4.]

A social security claimant has a statutory right to counsel at a disability hearing, and that right can only be validly waived if "the ALJ fully explains it." *Ratulowski v. Astrue*, 380 Fed. Appx. 552, 554 (7th Cir. 2010). A full explanation requires the ALJ to explain to *pro se* claimants: "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quotations and citations omitted). In cases where the ALJ does not provide the claimant with this information, the ALJ has a "heightened" duty to develop the record and must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.* at 841-42.

The exchange between the ALJ and Ms. Riley at the hearing regarding the fact that she did not have a representative with her went as follows:

7

ALJ: [N]ow you did know that you could have had a representative here, correct?

CLMT: No. I didn't know that.

ALJ: You didn't read the hearing notice? The notice that was sent to you to appear in front of me today tells you about representation. Did you not read it?

CLMT: I read – me and Missy, my case manager out there, read it together.

ALJ: Okay. Well, it tells you about representation. Did you want a representative?

CLMT: No. I'll be okay.

ALJ: No. You don't have to have, you don't have to have one. But, if you don't have one, you need to waive your right to representation or I refuse to have the hearing.

CLMT: Say that again.

ALJ: Okay. The law says that –

CLMT: I'm sorry.

ALJ: -- if you want to, you can get a representative. It's up to you to go get one. And they're usually attorneys. But, but, you get the representative yourself. If you don't want a representative you can do it by yourself. That's perfectly fine. But, I refuse to do it unless you sign a document to that effect. You want to sign it or not?

CLMT: Yeah.

ALJ: Okay. Give her the document. And all the document says too is exactly what I just told you, that you could have had a representative if you want to and you're telling me you don't want one. Now –

CLMT: If I want one, we stop the hearing now and we reschedule it or –

ALJ: I would give you, I would give you 30 days. But, I'm going to tell you something up front. You're probably never going to get one, because you're already getting the money, and the only way an attorney gets paid is if there's past benefits due. There's no past benefits due if you insisted and continued to get paid until you see me. I'll give you the 30 days, but I'd be real surprised if you got anybody. So, do you want the 30 days or not? Don't waste my time.

CLMT: No.

*          *          *

> ALJ: [As Ms. Riley is signing the waiver] Can you, can you not write your name? You can only print your name?
>
> CLMT: Yeah. I can –
>
> ALJ: Can you write your name?
>
> CLMT: Yeah.
>
> ALJ: Well, then underneath it, write your name, because you printed your name. And then you need to put the date, today's date, on it. Okay. Which is 4/17/2013.

[Filing No. 13-2 at 43-45.]

The cases the Commissioner cites in support of her argument that the ALJ's failure to obtain a valid waiver is harmless because the ALJ adequately developed the record all involved situations where an ALJ failed to advise the claimant of certain specific information. *See, e.g.*, *Ratulowski*, 380 Fed. Appx. at 554 (ALJ failed to advise claimant that any attorneys' fees would be subject to Court approval and are capped at 25 percent of past-due benefits, but adequately developed record); *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (same principle).

Here, conversely and significantly, when Ms. Riley inquired into specifics regarding representation, the ALJ actively dissuaded Ms. Riley from obtaining an attorney by telling her that he would be "real surprised" if she was able to find an attorney. [Filing No. 13-2 at 44.] He also gave her incorrect information – that because she had been receiving benefits and did not have past benefits due, no attorney would be interested in taking her case. [Filing No. 13-2 at 44.] This makes the ALJ's failure to obtain a valid waiver here different from the cases in which courts found that such a failure was overcome by the ALJ's adequate development of the record. The Court will not consider the ALJ's development of the record when he actively discouraged Ms. Riley from obtaining counsel and, in the process, provided her with inaccurate information (and with none of the information the Seventh Circuit has set forth as required). *See Skinner*, 478 F.3d

at 841 (in obtaining waiver of counsel, ALJ must advise claimant of "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees") (quotations and citations omitted).  The fact that the ALJ actively discouraged Ms. Riley from obtaining an attorney, and provided her with incorrect information regarding the possibility of representation, requires remand of this case.

The Court also notes that the ALJ used a callous and insensitive tone with Ms. Riley, telling her not to "waste my time," and was generally rude when he asked her several times if she could write her name or could "only print [her] name" when she signed the waiver.  [Filing No. 13-2 at 44-45.]  An ALJ is supposed to serve as a neutral, non-adversarial decision maker, yet the transcript from Ms. Riley's hearing indicates a somewhat aggressive and insensitive tone – indeed, the Commissioner characterized the ALJ's tone at the beginning of the hearing as "not exemplary" and "brusque[]."  [Filing No. 22 at 3.]  The Court finds the ALJ's tone disturbing, and recommends that, on remand, the Commissioner assign a different ALJ to consider Ms. Riley's eligibility for benefits.[2]

Given the Court's reason for remand, the Court need not consider the other issues raised by Ms. Riley.  The Court also notes that the evidence the ALJ obtained at the hearing may have been different had Ms. Riley been represented.  Accordingly, Ms. Riley's evidence-based arguments are moot.

---

[2] In support of this recommendation, the Court cites Filing No. 13-2 at 42 and Filing No. 13-2 at 51 (excerpts from hearing transcript).

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Riley benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). The Court also **RECOMMENDS** that the Commissioner assign a different ALJ to Ms. Riley's claim for benefits on remand. Final judgment shall issue accordingly.

Date: July 8, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**